UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 16-10272-NMG

**UNITED STATES OF AMERICA**

**v.**

**CAETANO OLIVEIRA**

**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**

**FEBRUARY 21, 2017**

**BOWLER, U.S.M.J.**

On or about September 23, 2016, defendant Caetano Oliveira (the "defendant") was arrested pursuant to an Indictment, returned by the Grand Jury sitting in the district of Massachusetts on September 14, 2016, charging that the defendant "having previously been convicted of a crime punishable by a term of imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce a firearm and ammunition, to wit: a Sig Sauer P290 9mm handgun, bearing serial number 25B010535, and eight rounds of 9mm ammunition and a Taurus PT740, .40 caliber pistol, bearing serial number SEM37900, and twelve

rounds of .40 caliber ammunition" in violation of Title 18, United States Code, Section 922(g)(1).

The defendant had his initial appearance before the court on September 23, 2016 before the Honorable Judith G. Dein. The defendant was represented by court appointed counsel. The government moved to detain the defendant pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(D), (f)(1)(E) and (f)(2)(A). A detention hearing before this court was scheduled for September 29, 2016. On that date defense counsel indicated that the defendant would enter into a period of voluntary detention without prejudice.

On December 1, 2016, at the request of defense counsel, the clerk scheduled a detention hearing for December 13, 2016. On that date this court conducted a detention hearing. The defendant was represented by court appointed counsel. The government called one witness. The defendant did not call any witnesses. After hearing argument, this court made an oral ruling from the bench finding by that the defendant constituted a risk of danger to the community and ordered him detained. This court indicated that if defense counsel wished to appeal the order of detention the court would issue a written decision. On January 18, 2017 defense counsel filed a motion for written findings (Docket Entry # 31). This court allowed the motion on January 19, 2017 and this opinion addresses the request for written findings.

DISCUSSION

I. A. Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f). See 18 U.S.C. § 3142(a).

Under 18 U.S.C. § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the safety of any other person or the community . . .;" (2) by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[1] This determination is

---

[1] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.) By not requiring that same standard <u>vis à vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--applied. That is precisely the holding in the Second Circuit. See e.g., <u>United States v. Jackson</u>, 823 F. 2d 4, 5 (D.C. Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986), <u>cert</u>. <u>dismissed</u>, 107 S.Ct. 562 (1986); <u>see also</u> <u>United States v. Patriarca</u>, 948 F.2d

3

made by the court at the conclusion of a detention hearing.

B.   The government is entitled to move for detention in a case that:

(1)   involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[2]

(2)   involves an offense punishable by death or life imprisonment;

(3)   involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[3] or

(4)   involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the

---

789, 792 (1st Cir. 1991).

[2] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
  (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

  (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 3156(a)(4).

[3] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 333, 336-7 (1st Cir. 1989).

Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses. <u>See</u> 18 U.S.C. § 3142(f).

C. In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including;
>
>> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

D. The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced. The government must satisfy its position with respect to risk of flight by a preponderance of evidence and with respect to dangerousness by clear and convincing evidence. See supra footnote 3. This court must then weigh all relevant factors [set forth under §3142(g)] and determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. United States v. Patriarca, 948 F.2d 789, 794 (1st Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215.

98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger <u>that the defendant might engage in criminal activity to the detriment of the community</u>. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also <u>emphasizes</u> that the risk that a defendant will <u>continue to engage</u> in drug trafficking constitutes a danger to the "safety of any other person or the community."

<u>Id</u>. (Emphasis added; footnotes omitted); <u>see</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to community does not refer only to risk of physical violence); <u>see also</u> <u>United States v. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to refer only to physical violence); <u>United States v. Hawkins</u>, 617 F.2d 59 (5th Cir.), <u>cert. denied</u>, 449 U.S. 962 (1980) (trafficking in controlled substances).[4]

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. § 3142(f)(1)(A) through 3142(f)(1)(D). That is to say, even if a detention hearing is appropriate under 18 U.S.C. § 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has

The issue critical to determining whether to detain a defendant is therefore, whether, with respect to the defendant, based on the guidelines set forth <u>supra</u> in part C of this Order, any condition or combination of conditions of release exist that will reasonably assure the safety of any person and the community; and the presence of the defendant. 18 U.S.C. § 3142(e).

    E. Further, the judicial officer must consider whether the crime charged is a "crime of violence" within the meaning of 18 U.S.C. § 3156 where the government has raised 18 U.S.C. § 3142(f)(1)(A) as a basis for pretrial detention. Thus, where the government moves for pretrial detention "on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)," <u>United States v. Ploof</u>, 851 F.2d 7, 11 (1st Cir. 1988), which, in this instance, involves the circumstance of whether the offense in the case at bar is a "crime of violence" under § 3142(f)(1)(A).

Cases establish that the circumstances in which a defendant committed a particular offense do not determine whether the crime of which the defendant is accused is a "crime of violence" as defined in 18 U.S.C. § 3156(a)(4). Rather, this court must categorically examine the nature of the offense to determine whether it is or is not a "crime of violence" within the meaning

---

determined that a hearing is appropriate under that latter section. <u>See United States v. Ploof</u>, 851 F.2d 7 (1st Cir. 1988).

of 18 U.S.C. § 3142(f)(1)(A). See <u>United States v. Johnson</u>, 704 F.Supp. 1398, 1400 (E.D. Mich. 1988) (recognizing that each "generic offense must be categorized as either a 'crime of violence' or not a crime of violence" under Bail Reform Act); <u>see</u> also <u>United States v. Bell</u>, 966 F.2d 703, 706 (1st Cir. 1992) (adopting categorical approach to assess whether offense is "crime of violence" under sentencing guidelines).

The Bail Reform Act's definition of the term "crime of violence" is twofold. An offense is a "crime of violence" if it is:

> (A) an offense that has as an element of the offense the use, or attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

The sentencing guidelines define the term "crime of violence" in a manner which is similar to the definition of the term in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B).[5]

This court does not find that the offense charged in the

---

[5] The sentencing guidelines define a "crime of violence" as a felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.C.A. § 4B1.2(1) (emphasis added).

9

Indictment constitutes a "crime of violence" within the meaning of the Bail Reform Act, 18 U.S.C. § 3142(f)(1)(A).

II. The defendant, Caetano Dias Oliveira, is 25 years of age. He was born in Fogo, Cape Verde and came to the United States with his family at the age of nine. The defendant does not have a passport and has not returned to Cape Verde since entering the United States.

According to the Pretrial Services report, the defendant stated that he became a citizen "through his father." However, an inquiry of Immigration and Customs Enforcement ("ICE") made by Probation/Pretrial Services to confirm the defendant's citizenship indicated that the defendant's immigration status could not be determined from database records. On January 19, 2017 this court requested that Probation/Pretrial Services attempt to confirm the defendant's immigration status. The Probation/Pretrial Services officer provided this court with the following information:

> I spoke with someone at the Law Enforcement Support Center who indicated that at a minimum Mr. Oliveira is a legal permanent resident (LPR) and no removal proceedings have been initiated against him. While there may be a possibility that he is a foreign born US citizen, there was nothing in the database to indicate that [he] ever applied to have his status changed from LPR to derivative citizen.

The defendant's last travel outside the United States was a trip to Canada with his foster parents at the age of 14.

Upon arriving in the United States the defendant's family settled in Boston, where they resided for several months before moving to Brockton. The defendant's parents separated and the defendant and his four siblings were placed in foster care for four years. They were eventually reunited with their mother and have continuously lived in Brockton since that time. At the time of his arrest the defendant was residing at 21 Market Street in Brockton with his mother five siblings. The defendant's father resides in Bridgewater. The defendant is single and has no children.

The defendant attended the B. B. Russell Alternative School in Brockton. He dropped out in the eleventh grade and later earned a GED while incarcerated in 2012.

Prior to his arrest the defendant was employed by Macy's Northeast Distribution Center in Dedham, where he delivered furniture. His prior employment also includes working as a mover for approximately one year.

The defendant has a prior criminal record. His juvenile record includes adjudications for carrying a dangerous weapon (knife), assault and battery with a dangerous weapon (thumb tack), breaking and entering in the daytime and breaking and entering in the nighttime with the intent to commit a felony.

His adult record includes convictions in Brockton for carrying a loaded firearm without a license, possession of a firearm with a defaced serial number, possession with intent to distribute a Class B drug (crack cocaine). His record also

11

reflects a conviction in Plymouth Superior Court for armed assault with intent to murder. The defendant's criminal record reflects two defaults. In addition, it should be noted that at the time of the defendant's arrest on the charge of armed assault with intent to murder he was on probation.

III. The relevant evidence at the detention hearing showed the following. The government called Special Agent Christopher Kefalas ("Kefalas") of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). He testified that he has been employed by ATF since 2015. Kefalas noted that he is currently assigned to the ATF office in Bridgewater, Massachusetts, where his role is to investigate violations of crimes including the possession of firearms.

Kefalas testified that he is the case agent in the federal investigation that led to the charges against the defendant in the above captioned Indictment. In further testimony Kefalas explained that on August 5, 2016 Brockton police executed a search warrant at a first floor apartment located at 8 Sawtell Street in Brockton pursuant to a drug investigation of Seriah (phonetic) Miranda ("Ms. Miranda"). The police knocked at the door and made entry after receiving no response. Upon entering the apartment they found Ms. Miranda, who was attempting to evade arrest. She was observed to have something in her hand which appeared to be heroin.

According to Kefalas, police officers found three other

12

residents in the apartment.  Kefalas identified the defendant in open court as one of the three other residents.  A search of the bedroom thought to be Ms. Miranda's revealed the presence of United States currency and a substance suspected to be heroin along with cutting agents and packaging material consistent with the trafficking and sale of heroin.

Kefalas noted that a search of the second bedroom uncovered documentation including the defendant's résumé located on an armoire.  A search of the armoire uncovered a loaded Sig Sauer 9 mm. handgun.  In the area of the armoire the police found an orange clothing cube which contained a .40 caliber Taurus pistol with one magazine with six rounds of ammunition and an additional six round magazine.  During a conversation with the police officers the defendant was able to describe the weapons that were recovered from the armoire.  Marijuana and a scale were also found.

According to Kefalas, the individuals in the apartment were given Miranda warnings during the course of the search. Sometime after the Miranda warnings were given a Brockton police detective asked the defendant why he was still carrying guns. The defendant responded, "I still have people on the street that don't like me."

Kefalas testified that in the course of the investigation he reviewed the defendant's prior criminal history.  The government offered a summary of the defendant's criminal history which was admitted, without objection, as Government Exhibit #

1.

Kefalas explained that Government Exhibit # 1 includes a conviction for assault to murder in which the defendant saw a rival drug dealer enter a vehicle with two white males. He then ordered someone to shoot at the vehicle. Kefalas suggested that the defendant thought a drug deal was taking place. The vehicle contained two Massachusetts State Police troopers who, after taking the rounds, activated their lights and returned fire. As a result of the event the defendant was convicted of assault with intent to murder. While the defendant was incarcerated the mail monitoring system at the jail intercepted a letter signed by the defendant stating that he didn't know that the people in the car were law enforcement officers when he ordered people to shoot at the vehicle.

According to Kefalas, Government Exhibit # 1 also contains a conviction in which the defendant was found in illegal possession of a firearm and crack cocaine. Kefalas also summarized a report of a shooting in which the defendant's then girlfriend was shot and killed outside a party. At the trial of the individual who was charged with the murder, the defendant testified that he was a member of the Flamesville[6] Legend Boys gang and that he was the target of the shooting. In addition,

---

[6] This court notes that the transcript from the detention hearing on December 13, 2016 refers to the "Plainfield" Legend Boys at page 15, line 14. However, a review of the October 25, 2012 trial transcript, which was included in Government Exhibit # 2, references the "Flamesville" Legend Boys at page 89, line17. This court attributes the inconsistency to the transcriber of the audio recording of the detention hearing.

14

the defendant testified about the level of his commitment to the gang noting that he would lie, shoot or steal on behalf the gang.

In further testimony Kefalas identified a document, which was admitted as Government Exhibit # 2, as a copy of a disciplinary report dated September 15, 2016 from the Plymouth County Correctional Facility, where the defendant is currently incarcerated on the above captioned charges. According to the report, the defendant was involved in a fight with another inmate. As a result of the incident the defendant required medical attention.

On cross examination it was established that Kefalas was not present during the execution of the search warrant and that the defendant did not resist arrest. It was also established that Ms. Miranda was been involved in a series of "controlled buys" in July of 2016 and that she was the target of the investigation and that the defendant was not mentioned in the affidavit in support of the search warrant for the Sawtell Street apartment.

IV. The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(D), (f)(1)(E) and (f)(2)(A). The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community.

In contradistinction, with regard to risk of flight the

court need only find by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear. The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

    A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The weight of the government's case against the defendant is substantial. The defendant was arrested in an apartment where two loaded firearms and additional ammunition were found in a room which it appeared he was using. When asked why he had the guns by a Brockton police detective, after being Mirandized, the defendant responded, "I still have people on the street that don't like me."

This is not the defendant's first encounter with firearms and violence. The defendant's juvenile record is replete with charges involving violence. As a nineteen year old he was

16

convicted of carrying a loaded firearm without a license and possession of a firearm with a defaced serial number. Less than three years later, while on probation, the defendant was convicted of armed assault with intent to murder in a drug related incident.

At the trial of the individual charged with the murder of the defendant's girlfriend, the defendant testified under oath acknowledging his gang related violent and illegal activity.

The defendant's past conduct suggests that he is unable to abide by conditions of release and refrain from violent behavior. The defendant has not demonstrated any recent conduct that suggests he is able to refrain from behavior involving firearms and drug related activity.

Based on the totality of the evidence the government has satisfied this court by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any person or the community if the defendant is released.

B. Risk of Flight

Next, this court turns to risk of flight.

To date this court has been unable to ascertain whether the defendant is a United States citizen, despite at least two inquiries made by Probation/Pretrial Services to ICE. The only fact that has been confirmed is that the defendant entered the United States on March 12, 2000. Although the defendant told

17

Probation/Pretrial Services that he gained derivative citizenship through his father, it has not been documented. The prospect of a long custodial sentence could serve as an incentive to flee.

But it must be noted that the defendant has never returned to Cape Verde since leaving with his parents at the age of approximately nine. Both of his parents and all of his siblings and half siblings live in the greater Brockton area. His ties to Cape Verde seem remote.

Although this court has a concern about the defendant's immigration status, at this time based on the totality of the circumstances this court does not find that the defendant constitutes a risk of flight or failure to appear. If the defendant is determined to be "out of status" by ICE at a later date this court would consider revisiting this determination.

V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the safety of any other person or the community if the defendant is released.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

       (1)   The defendant be, and hereby is, committed

to the custody of the Attorney General for
confinement in a corrections facility, separate,
to the extent practicable, from persons awaiting
or serving sentences or being held in custody
pending appeal;


(2)  The defendant be afforded reasonable opportunity
for private consultation with his counsel; and


(3)  On Order of a court of the United States or on
request of an attorney for the Government, the person
in charge of the corrections facility in which the
defendant is confined deliver the defendant to an
authorized Deputy U.S. Marshal for the purpose of any
appearance in connection with a court proceeding.



       /s/ Marianne B. Bowler
       **MARIANNE B. BOWLER**
       United States Magistrate Judge